Complainant bought from defendant a tract of land on the Palisades at Alpine. A contract was entered into for the purchase, a deed was executed and delivered and the complainant made payment. Complainant now seeks a return of part of the purchase price on the ground that the tract which actually passed under the deed has a less area than that he contracted to purchase and that he is accordingly entitled to an abatement proportionate to that of the amount of the deficiency.
The agreement to buy was dated February 18th, 1927, and the deed was delivered on the 25th day of March, 1927. The controversy arose from the circumstance that the land was purchased in part at least from the survey map attached to and made part of both the agreement to purchase and of the deed. This map contains a statement that the area of the tract in question is seven and two hundred and fifty-one thousandths acres. Subsequent surveys of the property, which is irregular in contour at the southeasterly end because of the configuration of the cliffs of the Palisades, show that area is actually six and nine hundred and six thousandths or six and nine hundred and seven thousandths acres and a computation from the map attached to the contract of sale and deed indicates that the area within the boundaries there marked is approximately six and eight hundred and seventy-six thousandths acres.
The price for the tract, as expressed in the agreement, is at the rate of $6,500 an acre and the agreement provides that should a survey disclose a greater or less acreage, then the total price is to be fixed accordingly. Complainant's contention is that since a survey shows a deficiency of three hundred and forty-five thousandths acres below the acreage seven and two hundred and fifty-one thousandths on the map, he is entitled to a return of three hundred and forty-five thousandths per cent. of the price of one acre, namely, $2,242.50.
I do not consider that complainant has made out a case which entitles him to relief. While it is true that the price paid was on the basis of seven and two hundred and fifty-one *Page 241 
thousandths acres, the agreement does not definitely provide that a tract of that size was to be delivered. Taking the terms of the agreement and the map together it would seem that what complainant purchased was a certain tract of land of a certain width beginning at the boulevard and extending to the edge of the Palisades. If that is what he bought, that is what the deed conveyed to him. The tract he bought is the tract set forth in the map attached to the agreement. The width of the tract and its northeasterly and southwesterly boundaries correspond to the deed and to all the surveys that have been made of the property. In addition to this map two other surveys have been subsequently made and presented to the court. None of the three surveys conforms exactly to the other two in showing the edge of the cliffs of the Palisades which constitute the southeasterly end of the tract. This is due to the difficulty of fixing the exact contour of the more or less broken cliffs at this point.
It is important to note that although the area supposed to be within the lines shown on the map attached to the agreement is stated as seven and two hundred and fifty-one thousandths acres, calculation of the area within the boundary lines of this map, which is drawn to scale, shows that the area within the lines is even slightly less than the areas shown by the subsequent surveys.
There is therefore an ambiguity in the map itself since the map on calculation shows a discrepancy between the stated acreage and the acreage shown as enclosed within its boundaries.
The agreement to purchase sets forth that the tract was to begin at a certain point, run in a certain direction "to the edge of the steep cliffs of the Palisades; thence northerly, easterly and southerly along the edge of said steep cliffs as they turn and wind to the point where the edge of said cliffs intersects the northerly line of said tract as shown in the aforesaid survey."
The agreement contains the following provisions: "It is understood and agreed that the within described property is sold at the rate of six thousand five hundred dollars ($6,500) *Page 242 
per acre, and should a survey disclose a greater or less acreage, then the total price is to be fixed accordingly."
Then follows this provision: "The price is forty-seven thousand one hundred and thirty-one and 50/100 dollars, payable as follows:", with the provisions for payment of various sums from time to time and mortgages for the balance. There is a provision for delivery on or before July 1st, 1927, of a good and valid marketable title by warranty deed. There is a provision that deed shall be delivered on receipt of a certain sum in cash on April 1st, 1927, or earlier at the seller's option, provided two weeks' notice shall have been given to the purchaser and that the seller may have the right to postpone the time for closing beyond April 1st, to not later than July 1st. These provisions were evidently inserted to allow the seller to complete its title under its contract from the estate which then owned the premises.
It will be noted that the agreement provides the purchase price is $47,131.50. This is actually seven and two hundred and fifty-one thousandths times $6,500 and it is obvious that both the parties considered that this was the acreage in the tract. However, the agreement contains the provision above quoted which indicates that the parties were not certain as to the acreage, for it is provided that the property is sold at the rate of $6,500 per acre and that should a survey disclose a greater or less acreage then the total price is to be fixed accordingly.
Since the boundaries of the tract were known to the purchaser both from the description in the agreement and from the scale map attached to it the purchaser could have ascertained the actual acreage either from having a survey made before he took title or from having made a calculation from the scale map. Either of these would have disclosed the situation of which he now complains. I consider it was the intention of the clause of the agreement providing for a survey that if either party wished to vary the price he should make a survey before the closing of the title. That this is the proper construction to be given to the provision seems clear from the phraseology of the clause itself. This clause *Page 243 
provides that "the total price is to be fixed accordingly." This obviously refers to the price to be provided for at the closing by cash payments and mortgages. Had the intention been otherwise, instead of referring to the price as being fixed according to the survey the obligation to pay a larger amount or to repay an excess amount after the transaction was consummated will not have referred to a survey as fixing the price.
The purchaser accepted the tract and made the payments without making any survey before the closing of title and therefore cannot be heard to complain that there was a shortage in acreage.
The seller contends that the actual configuration of the tract at the cliffs is such as to include a projection or plateau which does not seem to be indicated on the map attached to the agreement of purchase, and that the inclusion of this plateau as part of the tract passing by the deed brings the actual acreage conveyed up to slightly more than the seven and two hundred and fifty-one thousandths acres. It is unnecessary to pass on the validity of this contention since the action has been disposed of on other grounds.
A decree dismissing the bill will be advised.